UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JANIE PAULETTE BERRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 3:11-CV-277 |
| ) | (PHILLIPS/SHIRLEY) |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of the Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment [Doc. 11] and Defendant's Motion for Summary Judgment [Doc. 18]. Plaintiff Janie Paulette Berry ("Plaintiff") seeks judicial review of the decision by Administrative Law Judge ("ALJ") John L. McFayden to deny her benefits, which was the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

**I. BACKGROUND**

On November 25, 2008, Plaintiff protectively filed an application for a period of disability and disability insurance benefits. [Tr. 17]. In the application, Plaintiff alleged a period of disability beginning on January 1, 2000. [Tr. 17, 143]. After her application was denied initially and also denied upon reconsideration, Plaintiff requested a hearing. [Tr. 73-74]. On December 4, 2009, a hearing was held before the ALJ, at which Plaintiff appeared, with counsel,

and testified, along with a vocational expert to review the determination of Plaintiff's claim. [Tr. 29-53]. On December 21, 2009, the ALJ found that Plaintiff was not under a disability from January 1, 2000 through the date last insured on March 31, 2003. [Tr. 17-24]. On May 18, 2011 the Appeals Council denied Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. [Tr. 1]. The Plaintiff now seeks judicial review of the Commissioner's decision and summary judgment in her favor. [Doc. 11].

**II. ALJ'S FINDINGS**

The ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2003.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 1, 2000 through her date last insured of March 31, 2003 (20 C.F.R. § 404.1561 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairments: degenerative joint disease left shoulder (20 C.F.R. § 404.1520(c).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of light work as defined in 20 C.F.R. § 404.1567(b) with occasional overhead use of the left arm.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 C.F.R. § 404.1565).

7. The claimant was born on February 2, 1950 and was 53 years old, which is defined as a younger individual age 18-49, on the date last insured (20 C.F.R. § 404.1563).

8. The claimant has a marginal education and is able to communicate in English (20 C.F.R. § 404.1564).

2

9. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy (20 C.F.R. § 404.1569, 404.1569(a) and 404.168(d)).

10. The claimant was not under disability, as defined in the Social Security Act, at any time from January 1, 2000, the alleged onset date, through March 31, 2003, the date last insured (20 C.F.R. § 404.1520(g)).

[Tr. 19, 21, 22, 23].

### III. DISABILITY ELIGIBILITY

To qualify for SSI benefits, a plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI if he has financial need and he is aged, blind, or under a disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At step five, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

**IV. STANDARD OF REVIEW**

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C.

4

§ 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson,

5

378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## V. RELEVANT EVIDENCE

The relevant evidence in the record can be summarized as follows:

*A. Rebecca P. Joslin, Ed.D.*

On January 5, 2007, Dr. Joslin documented a psychiatric review of the Plaintiff, evaluating her for affective disorders, anxiety-related disorders, and personality disorders from January 1, 2000 to March 31, 2003. [Tr. 191]. This evaluation identified the presence of major depressive disorder, bereavement, generalized anxiety disorder, and an unspecified type of personality disorder. [Tr. 194,196,198]. Dr. Joslin indicated that the Plaintiff would have been moderately limited in maintaining concentration, persistence, or pace; she also indicated that Plaintiff would have been only mildly limited in maintaining social functioning and engaging in activities of daily living. [Tr. 201].

In a Mental Residual Functional Capacity ("RFC") Assessment worksheet, Dr. Joslin determined that the Plaintiff would have been moderately limited in only three areas: (i) ability to maintain attention and concentration for extended periods; (ii) ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (iii)

6

ability to respond appropriately to changes in the work setting. [Tr. 205-06]. In the remaining seventeen categories, the Plaintiff would not have been significantly limited. [Tr. 205-06].

Dr. Joslin further determined that during the relevant time period, the Plaintiff would have been able to understand and remember things, to interact appropriately with others, and with some difficulty to maintain attention, concentration, persistence, and pace and to adapt to changes. [Tr. 207].

*B. Edward L. Sachs, Ph.D.*

On February 3, 2009, Dr. Sachs completed a psychiatric review of the Plaintiff for affective disorders and anxiety-related disorders from January 1, 2000 to March 31, 2003. [Tr. 297-309]. Dr. Sachs identified moderate, recurrent major depressive disorder and generalized anxiety disorder. [Tr. 300, 302]. Dr. Sachs indicated that Plaintiff would have experienced a moderate degree of limitation in activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, or pace. Dr. Sachs concluded that "overall the evidence supports no more than moderate psych limitations which do not preclude basic work related mental activities." [Tr. 309].

Dr. Sachs also completed a Mental RFC Assessment worksheet, identifying six categories in which the Plaintiff would have been moderately limited: (i) ability to understand and remember detailed instructions; (ii) ability to carry out detailed instructions; (iii) ability to maintain attention and concentration for extended periods; (iv) ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (v) ability to interact appropriately with the general public; and (vi) ability to respond appropriately to changes in the work setting. [Tr. 323-24]. Dr. Sachs noted that Plaintiff could perform simple

7

and low level detailed tasks over a full workweek, could interact infrequently or one to one with the general public and meet basic social demands in a work setting, and could adapt to gradual or infrequent changes. [Tr. 325].

Dr. Sachs's evaluation was reviewed and affirmed on March 9, 2009 by Dr. George T. Davis, Ph.D. [Tr. 326].

*C. Robert S. Spangler, Vocational Expert*

Dr. Spangler testified at the December 4, 2009 administrative hearing in the capacity of vocational expert. [Tr. 29].

Dr. Spangler testified that there were 5,620,000 jobs in the nation and 119,843 jobs regionally that Plaintiff could perform if she were capable of a full range of motion. [Tr. 50]. He reduced this number by 20 percent to account for her physical limitations. [Tr. 50]. Dr. Spangler testified that, if the six moderate limitations contained in Dr. Sachs's functional capacity assessment were fully credited, then there would be no jobs available to Plaintiff. [Tr. 52].

**VI. ANALYSIS**

Plaintiff argues that the disability decision of ALJ McFayden is not supported by substantial evidence. [Doc. 12 at 5]. Specifically, Plaintiff contends first, that the ALJ failed to adequately document the rationale behind his RFC assessment in accordance with 20 C.F.R. § 404.1520a; and second, that the ALJ did not sufficiently address the opinions of the state agency psychologists. [Doc. 12 at 8, 12].

To Plaintiff's first argument, the Commissioner responds that Plaintiff fails to explain "how or why [the] alleged error caused harm." [Doc. 19 at 6]. The Commissioner points out that "[a] party seeking to overturn an agency's administrative decision normally bears the burden of showing that an error was harmful." Shinseki v. Sanders, 129 S. Ct. 1696, 1706 (2009); [Doc. 19

8

Case 3:11-cv-00277-TWP-CCS   Document 20   Filed 09/13/12   Page 8 of 15   PageID #: 94

at 6]. To Plaintiff's second argument, the Commissioner responds that the ALJ's decision is consistent with the findings of the state agency psychologists, and that therefore it is irrelevant that the ALJ failed to address the psychologists' opinions in detail. [Doc. 19 at 9, 10].

### A. The ALJ's Mental RFC Determination

The Plaintiff argues that the ALJ erred in failing to follow the procedure for evaluating the severity of a mental impairment and in subsequently concluding that the Plaintiff had no severe mental impairments. [Doc. 12 at 8]. The Commissioner does not address in detail whether the ALJ made such a procedural error; instead the Commissioner responds that if there was such an error, it was harmless. [Doc. 19 at 6, 7]. The Court finds the Plaintiff is correct that the ALJ failed to follow the proper procedure, whether it was harmless or not is covered below.

An impairment is severe if it "significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). A non-severe impairment "does not significantly limit [one's] physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521. Section 404.1520a outlines the process by which severity of impairment is to be evaluated. The ALJ must rate the claimant in these four categories: (i) daily living; (ii) social functioning; (iii) concentration, persistence or pace; and (iv) episodes of decompensation. 20 C.F.R. § 404.1520a. Ratings are based on a five-point scale from "none" to "extreme" in the first three categories, or from "none" to "four or more" in the fourth category. 20 C.F.R. § 404.1520a. A mark in the last point of the scale indicates "a degree of limitation. . . incompatible with the ability to do any gainful activity." 20 C.F.R. § 404.1520a(c)(4). Generally, an impairment will not be considered severe if limitation is "none" or "mild" in the first three categories and "none" in the last category. 20 C.F.R. § 404.1520a(d)(1). The ALJ must treat an impairment as severe if it has "more than a minimal effect" on a claimant's "ability to function independently, appropriately,

9

and effectively in an age-appropriate manner." SSR 96-3p, 1996 WL 374181 (July 2, 1996); Griffeth v. Comm'r of Soc. Sec., 217 F. App'x 425, 428 (6th Cir. 2007). Beyond these guidelines, the regulations do not indicate whether a rating above "mild" but below "extreme" in any of the categories will qualify an impairment as inherently severe or non-severe. A decision on the severity of mental impairment "must include a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(2).

A party contesting an administrative decision bears the burden of showing harm caused by the error. Sanders, 129 S. Ct. at 1706. An ALJ's procedural error is harmless if his decision is supported by substantial evidence and the procedural error does not deprive the claimant of an important benefit or safeguard. Wilson, 378 F.3d at 546-47.

In this case, the ALJ concluded "that the claimant's depression and anxiety is controlled with medication and counseling and results in only mild functional limitations." [Tr. 23]. He based his conclusion on the medical evidence, which revealed overall improvement in the Plaintiff's symptoms as treatment continued. [Tr. 20-21]. As the ALJ noted, from initial treatment in February 2001 until the present, the Plaintiff reported doing well or improving in July 2001, March 2002, May 2003, December 2004, February 2006, April 2007, December 2007, May 2008, and September 2009. [Tr. 20-21].

The Plaintiff also reported engaging in a wide variety of activities, many of which fit into one or more of the four C.F.R. categories. [Tr. 20-22]; see 20 C.F.R. § 404.1520a. Several of these social activities included dancing, shopping, and riding go-carts with her husband; she also travelled from Morristown to Knoxville a couple of times to visit a friend. [Tr. 20-21, 224, 226-28, 242]. Plaintiff's reported daily activities, several of which require concentration and persistence, include watching television, listening to music, doing puzzle books, and playing

video games. [Tr. 22, 167]. Taken together, all of this evidence could arguably indicate that the functional limitations of Plaintiff's mental impairment from January 2000 until March 2003 did not qualify as severe in the categories provided in the regulations, and therefore, if that were all that was in the record, the ALJ could arguably conclude that the impairment had less than a minimal effect on Plaintiff's ability to function. See 20 C.F.R. § 404.1520a. However, that is not all that is in the record.

As noted above, the Court finds that the Plaintiff is correct in asserting that the ALJ did not explicitly rate the Plaintiff's capacity using the four-category, five-point scale provided in the regulations. [Doc. 12 at 6]; see 20 C.F.R. § 404.1520a. However, while the Commissioner has provided a strong argument to Court that if the ALJ had rigorously followed this regulation procedure, his decision would have remained the same, [Tr. 20-22], the arguments are not those made by the ALJ and do not explain the failure to address the other evidence in the record, particularly the findings of the state agency psychologists.

### B. State Agency Psychologists

The Plaintiff argues that the ALJ erred by not sufficiently addressing the opinions of Drs. Joslin and Sachs, the state agency psychologists, which Plaintiff claims support a finding for disability when taken together with testimony of Dr. Spangler, the vocational expert. [Doc. 12 at 12, 14]. The Commissioner responds that the ALJ's findings were in fact consistent with the opinions of Drs. Joslin, Sachs, and Spangler, that the ALJ provided the appropriate minimal statement of the findings, and that Dr. Spangler's conclusion was based on flawed premises. [Doc. 19 at 9, 10].

Regulations allow an ALJ to determine the weight to give a medical opinion in making a disability determination. 20 C.F.R. § 404.1527(d). In making this determination, an ALJ must

11

explain the weight given to any source opinion. 20 C.F.R. § 404.1527(f)(2)(ii). It is difficult to determine whether an error is harmless if the record contains "conflicting or inconclusive evidence" not resolved by the ALJ or "evidence favorable to the claimant that the ALJ simply failed to acknowledge or consider." Rabbers v. Comm'r of Soc. Sec., 582 F.3d 647, 657-58 (6th Cir. 2009).

In this case, the ALJ simply stated in summary fashion that he "notes the findings of the State Agency and finds that these opinions are consistent with the finding that the claimant is not disabled and finds that these findings are not inconsistent with the findings of the Administrative Law Judge." [Tr. 22]. The ALJ did not even mention the names of Dr. Sachs or Dr. Joslin let alone their reports or findings. His findings regarding the Plaintiffs alleged mental disability, which he contends is consistent with the state agency findings and opinions are stated, "After carefully reviewing all the evidence of record, the Administrative Law Judge concludes that the claimant's depression and anxiety are controlled with medication and counseling and results in only mild functional limitations." [Tr. 21 (emphasis added)]. The problem with this "conclusion" is that it is not consistent with the findings and opinions of the state agency psychologists. In fact, it is contrary to their findings – a point made abundantly clear in the claimant's examination of the Vocational Expert, [Tr. 51-52],[1] and apparently, somewhat considered in the ALJ's last question to the Vocational Expert, [Tr. 51].[2]

It is clear that Dr. Sachs' records indicate functional limitations beyond the "mild" range noted by the ALJ. Dr. Sachs specifically found Plaintiff's fractional limitations resulting from her mental disorder to be greater than mild, to be "moderate," with regard to her restrictions on

---

[1] The record indicates the Vocational Expert was shown "Exhibit 10A [phonetic]." It is clear from the questioning and reference to the record that this references Exhibit 10F, with Dr. Sach's six findings of moderate limitations.
[2] Although the questions by both the ALJ and the Plaintiff's attorney reference her ability to work 15% of the time, but neither reference the medical source of this limitation.

12

activities of daily living, difficulties in maintaining social functioning, difficulties in maintaining concentration, persistence or pace in his "Rating of Functional Limitations." [Tr. 307]. On his "Mental Residual Functional Capacity Assessment," Dr. Sachs concluded she was "moderately" limited in her ability to understand and remember detailed instructions, in her ability to carry out detailed instructions, in her ability to maintain attention and concentration for extended periods, in her ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. He also concluded she was moderately limited in her ability to interact with the general public and in her ability to respond appropriately to changes in the work setting. [Tr. 323]. Dr. Joslin made similar "moderate" functional limitations in her conclusion. [Tr. 205-207].[3]

The significance of these conclusions is that when they were presented to the Vocational Expert, she stated that if they were factored in or considered, given that the moderate findings were in critical areas, that there would be "no jobs" at the light level available to the Plaintiff. After this testimony the ALJ abruptly closed the hearing and asked no follow-up questions.

The Court is mindful of the Commissioner's arguments that the statements in Section III (elaborating on the preceding capacities) takes precedence over the summary conclusion in Section I. However, the ALJ discussed neither mental RFC and did not discuss or indicate such reliance in his opinion. Given the conclusions and "moderate" functional limitations noted by the two state agency psychologists, coupled with the vocational experts testimony that consideration of these would mean there were "no jobs" available to Plaintiff, it was incumbent on the ALJ to evaluate and address this issue and not make the summary statements he did. His

---

[3] Despite this the ALJ stated the record did not contain *any* opinions from treating and examining physicians indicating Plaintiff even has limitations greater than he determined, *i.e.* mild.

13

failure to do so also makes the failure to use 20 C.F.R. 404.1520a *et seq.*, more than harmless error.

Accordingly, the Court finds that the ALJ's decision does not explain the weight given to the two state agency psychologists, or the testimony by the Vocational Expert, based on these records and functional limitations contained therein and his decision appears inconsistent with the opinions of Drs. Joslin, Sachs, and Spangler. In any event, the Court finds that the ALJ has not adequately explained or documented his decision's conformity with those opinions. Therefore, the Court is unable to would affirm the ALJ's decision on this issue, and will remand for further review consistent with this opinion.

## VII. CONCLUSION

For all the above reasons, the undersigned **RECOMMENDS**[4] that the Commissioner's Motion for Summary Judgment **[Doc. 18]** be **DENIED** and the Plaintiff's Motion for Summary Judgment **[Doc. 11]** be **GRANTED**. The undersigned **RECOMMENDS** that this case be **REMANDED** to the Commissioner for further review consistent with this Report and Recommendation.

Respectfully Submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).